**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**TY CLARKE, ESQ., SBN 339198**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208,
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TClarke@LawyersFTP.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK STERLING, an individual;<br><br>             Plaintiff,<br>v.<br><br>CITY OF ANTIOCH, a municipal corporation; TAMMANY BROOKS, in his individual capacity as the Chief of Police of the Antioch Police Department; and DOES 1-50, inclusive.<br><br>             Defendants. | Case No.: 3:22-cv-07558-TSH<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Magistrate Judge Thomas S. Hixson<br><br>Date: March 30, 2023<br>Time: 10:00 a.m. |

Plaintiff submits the following Opposition to Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

On September 17, 2021, Plaintiff Frank Sterling and other non-violent demonstrators were peacefully protesting the retirement party of controversial Antioch Chief of Police Tammany Brooks at a public park when they were targeted by an aggressive group of police supporters. As alleged in Plaintiff's complaint, Defendant Brooks and/or high ranking decisionmakers within the Antioch Police Department instructed the numerous Antioch Police Officers on-scene to join the police supporters in targeting Mr. Sterling and his fellow protesters. This led to a violent attack on Mr. Sterling in which a group of officers tackled Mr. Sterling to the ground, inflicted numerous body blows, and Tasered him multiple time.

Plaintiff's Complaint identifies a culture of unaccountability within the Antioch Police Department that has been uncovered by an FBI investigation. As stated in the news article included in the Plaintiff's Complaint, 14% of patrol officers in the Antioch Police Department are currently under investigation by the FBI.[1] Plaintiff's Complaint alleges that this same culture of unaccountability caused the Antioch Police Officers who assaulted Mr. Sterling to attack him with impunity, despite the fact that it was clearly unconstitutional excessive force.

Plaintiff's Complaint identifies a widespread culture within the Antioch Police Department that informed the officers' attack on Mr. Sterling, a journalist and protester. It identifies at least eight Antioch Police Officers—14% of the Defendant City's police force—currently under investigation by the FBI and local prosecutors. It also alleges that Defendant Brooks and other high ranking decisionmakers within the police department ordered the officers to target Mr. Sterling and his fellow non-violent protesters. For these reasons, Defendants' motion to dismiss should be denied in its entirety.

---

[1] https://www.ktvu.com/news/mayor-says-10-of-antioch-police-department-under-investigation

## II. STATEMENT OF FACTS

**A. Incident Fact Allegations**

On September 17, 2021, Plaintiff Frank Sterling and a few other peaceful demonstrators protested the public retirement party of controversial Antioch Chief of Police Defendant Tammany Brooks at Williamson Rach Park in Antioch, California. (ECF No.1, Plaintiff's Complaint "Complaint", ¶ 12). Mr. Sterling and his fellow protesters, five or six total, were then confronted by a larger group of approximately 20 aggressive police supporters who yelled and threatened them, escalating the situation. (Complaint ¶ 13). Numerous uniformed Antioch Police Officers responded in a seemingly biased manner, standing next to or with their back to the police supporters as they faced off against Mr. Sterling and his few other fellow protesters. (Complaint ¶ 14).

As the situation continued to escalate, a fight broke out between a protester and police supporter. (Complaint ¶ 15). Multiple officers began targeting the protester, manhandling her. (Complaint ¶15). Mr. Sterling, a journalist, was recording the arrest when he bumped into the officers. (Complaint ¶16). Multiple yet-to-be-identified Antioch Police Officers grabbed Mr. Sterling and gang-tackled him to the ground. (Complaint ¶16). These officers dragged Mr. Sterling in the grass while more piled on top of Mr. Sterling, using force in a manner that suggested they were intending to harm him. (Complaint ¶ 16). While Mr. Sterling was on the ground and under the control of multiple officers, another officer maliciously Tasered Mr. Sterling twice. (Complaint ¶ 5).

Regarding Defendant Brooks' involvement in the officers' unlawful conduct, Plaintiff's Complaint is clear: "On information and belief, these Antioch Police Officers targeted the peaceful protested **at the instruction of Defendant Brooks and his high-ranking colleagues in the Antioch Police Department** that had planned the party because the protesters were disrupting Defendant Brooks' retirement celebration." (Complaint ¶19) (emphasis added).

B. *Monell* **Fact Allegations**

As alleged in Plaintiff's Complaint, the Defendant City's police department has a "recent history of systemic unlawful conduct" and a "culture of lack of accountability for officers who engage in unlawful conduct." (Complaint ¶¶ 20, 21). As evidence of this culture, Plaintiff's Complaint includes a link to a KTVU news story published on August 22, 2022, in which Antioch Mayor Lamar Thorpe explicitly confirmed that numerous Antioch Police Officers are under investigation by the FBI and Contra Costa County prosecutors. (Complaint ¶20, footnote 1). These investigations appear to be for multiple forms of crimes of moral turpitude, including the abuse of prescription testosterone supplements and statements from officers about bringing heroin and cocaine to parties. (Id.). The interim police chief of the Antioch Police Department, Steve Ford, called the officers' alleged wrong doings "very disturbing." (Id.).

Regarding this investigation into the culture of criminal wrongdoings in the Antioch Police Department, Plaintiff's Complaint explicitly states that "14% of Antioch Police Officers are under investigation by the Federal Bureau0 of Investigations and the Contra Costa County District Attorney for criminal activity." (Complaint ¶ 20). As outlined in the article included in Plaintiff's Complaint, 14% of the officers translates to eight of the 57 officers in the Antioch Police Department being under investigation by the FBI and county prosecutors. (Complaint ¶20, footnote 1). Plaintiff's Complaint then goes further in drawing the connection between this culture and the use of excessive force against Mr. Sterling: "On information and belief, the Defendant Doe Officers' violations of Mr. Sterling's constitutional rights were motivated by the Antioch Police Department's culture of lack of accountability for officers who engage in unlawful conduct." (Complaint ¶ 21).

### III. ARGUMENT

### A. Legal Standard

Rule 8 requires only a "a short and plain statement of the claim." FRCP 8 (a) (2). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of those claims. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a plaintiff's pleadings, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." Id. (internal quotations omitted).

Even so, there is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The Rule 12(b)(6) issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Jackson v. Carey*, 353 F .3d 750, 755 (9th Cir. 2003). To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (internal quotation marks omitted).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v Litton Indus., Inc.,* 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Leiche, Inc. v. N. Cal. Collection Serv., Inc.,* 911 F.2d 242, 246-47 (9th Cir. 1990).

### B. Plaintiff's Complaint Presents a Viable *Monell* Claim

Plaintiff cannot state a claim for *Monell* liability without first identifying an underlying violation of their constitutional or federal rights. See *Collins v. City of Harker Heights*, Tex., 503 U.S. 115, 120 (1992) (proper analysis for *Monell* liability requires courts to analyze two different issues: (1) whether harm was caused by a constitutional violation and (2) if so, whether the municipality if responsible for the violation). Here, Plaintiff has identified two constitutional violations that underlie his *Monell* claim — retaliatory arrest and force under the First Amendment and excessive force under the Fourth Amendment.

However, a municipality is only liable for the acts of its employees through section 1983 where the plaintiff can show that a policy, custom, or practice led to the violation at issue. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

"In this circuit, a claim of municipality liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice." *Galbraith v Cnty. Of Santa Clara,* 307 F.3d 1119, 1127 (9th Cir. 2002). Yet some specificity is nevertheless required. See, e.g., *Inman v. Anderson*, 294 F. Supp. 3d 907, 920 (N.D. Cal. 2018) (noting that while bare allegations may suffice, the complaint nevertheless must allege a plausible claim for relief in compliance with *Twombly* and *Iqbal*); *Martinez v. Monterey Cnty. Sheriff's Office*, 2019 WL 176791, at *4 (N.D. Cal. Jan. 11, 2019) (rejecting *Monell* theory of liability where no specific facts were alleged).

**<u>Custom</u>**

Custom is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990). "[E]vidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded" can be sufficient to support a finding of municipal policy. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). The practice must, however, be "of sufficient duration, frequency and consistency to constitute an actionable policy." *Trevino*, 99 F.3d at 920.

"The line between 'isolated or sporadic incidents' and 'persistent and widespread conduct' is not clearly delineated." *Warkentine v. Soria*, No. 1:13-cv-01550-LJO-MJS, 2104 WL 2093656, at *6 (E.D. Cal. May 19, 2014). The Ninth Circuit has concluded that two unconstitutional assaults by county officials occurring three months apart are not sufficient to show a custom or practice. *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988); *see also Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1203 (W.D. Wash. 2008) ("[A]bsent additional proof, the mere existence of one or two incidents of unconstitutional conduct is insufficient to make out a 'pattern or practice' or 'policy and custom' claim under § 1983."). On the other hand, the Ninth Circuit has also held that five incidents occurring on the same day could permit the inference of a policy of suppressing political speech. *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005). Moreover, the Supreme Court has specifically declined to conclude that a single incident could never trigger municipal liability. *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997).

Here, Plaintiff's complaint alleged that the Antioch Police Department is struggling with "systemic unlawful conduct" that is indicated in part by local journalism included in the complaint in which the Antioch mayor and interim police chief both acknowledged the troubling pattern of

lawlessness within the Police Department. Furthermore, Plaintiff's Complaint alleged that Defendant City of Antioch's Police Department has a "culture of lack of accountability for officers who engage in unlawful conduct" that is so rampant that 14% of Antioch Police Officers (eight out of 57 total officers) are under investigation by the FBI and the Contra Costa County District Attorney's Office.

Thus, Plaintiff's Complaint identifies at least eight officers' conduct that indicates a custom of lawlessness and disregard for the law. At this stage of the proceedings, this should be sufficient to establish this custom for *Monell* purposes. *See Menotti,* supra at 1148. Accordingly, Defendant's motion to dismiss Plaintiff's *Monell* cause of action should be denied.

### C. Defendant Brooks Should Not Be Dismissed

In their motion, Defendants state the following: "Aside from serving as the Chief of Police, there are zero facts that Chief Brooks was involved in this incident." (Defendants' Motion to dismiss, page 9). This is simply untrue. Plaintiff's Complaint explicitly states that the Antioch Police Officers "targeted the peaceful protesters at the instruction of Defendant Brooks and his high-ranking colleagues in the Antioch Police Department".

1. Ratification Theory

A *Monell* claim under a theory of ratification exists when "an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). "[R]atification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

As previously stated, the officers' targeting of peaceful protesters and subsequent violations of Plaintiff's constitutional rights were motivated by the culture of lawlessness and unaccountability within the Antioch Police Department. Thus, as Plaintiff's Complaint alleges that Defendant Brooks

instructed the officers to engage in conduct that was motivated by the police custom informing the *Monell* cause of action, Defendant Brooks' inclusion in Plaintiff's *Monell* cause of action is proper.

2. Supervisory Liability

In addition, Defendant Brooks may be held liable in his capacity as a supervisor.

In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the Ninth Circuit approved the district court's instruction that the jury could find a police chief liable in his individual capacity if he "set [] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury." Id. at 646 (citations omitted).

As stated above, Defendant Brooks individually instructed the Defendant officers to target the peaceful protestors which set in motion a series of acts that foreseeably led to the Defendant officers committing constitutional violations and injuries against Plaintiff's.

### IV.  CONCLUSION

For all the aforementioned reasons, Plaintiff respectfully requests that this Court DENY Defendants' motion as to their *Monell* claim and Defendant Brooks' status as a defendant.

Date: February 17, 2023                                                    Respectfully submitted,

**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**


/s/ Ty Clarke
TY CLARKE
COUNSEL FOR PLAINTIFF