UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK STERLING,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ANTIOCH, et al.,<br><br>    Defendants. | Case No. 22-cv-07558-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

## I.   INTRODUCTION

Plaintiff Frank Sterling brings this 42 U.S.C. § 1983 case against Defendants City of Antioch and Antioch Police Department ("APD") Chief Tammany Brooks, alleging APD officers unlawfully arrested him and used excessive force. Pending before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. Sterling filed an Opposition (ECF No. 14) and Defendants filed a Reply (ECF No. 17). The Court finds this matter suitable for disposition without oral argument and **VACATES** the March 30, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** Defendants' motion.[1]

## II.   BACKGROUND

On September 17, 2021, Sterling and a few other demonstrators protested the public retirement party of Chief Brooks at Williamson Rach Park in Antioch, California. Compl. ¶ 12, ECF No. 1. Sterling and his fellow protesters, five or six total, were then confronted by a larger group of approximately 20 police supporters who yelled and threatened them, escalating the

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 11, 12.

situation. *Id.* ¶ 13. Sterling alleges numerous uniformed APD officers responded "in a biased manner," standing next to or with their back to the police supporters as they faced off against Sterling and his fellow protesters. *Id.* ¶ 14. As the situation continued to escalate, a fight broke out between a protester and a police supporter. *Id.* ¶ 15. Multiple APD officers began targeting the protester, manhandling her. *Id.* Sterling, a journalist, was recording the arrest when he bumped into the officers. *Id.* ¶16. Multiple yet-to-be-identified APD officers grabbed Sterling and gang-tackled him to the ground. *Id.* These officers dragged Sterling in the grass while more piled on top of him, using force in a manner that suggested they "intended to harm [him] rather than serve any legitimate law enforcement purpose." *Id.* ¶ 17. While Sterling was on the ground and under the control of multiple officers, another officer tasered him twice. *Id.* ¶¶ 5, 17.

Sterling filed this case on December 1, 2022, alleging three causes of action under 42 U.S.C. § 1983: (1) First Amendment retaliatory arrest against Defendant Does 1-50; (2) Fourth Amendment excessive force against Defendant Does 1-50; and (3) supervisory and municipal liability for unconstitutional custom or policy under *Monell* against City of Antioch, Chief Brooks, and Defendant Does 1-50. Compl. ¶¶ 24-36.

As to his *Monell* cause of action, Sterling alleges the APD has a "recent history of systemic unlawful conduct" and a "culture of lack of accountability for officers who engage in unlawful conduct." *Id.* ¶¶ 20, 21. As evidence of this culture, Sterling includes a link to a KTVU news story published on August 22, 2022, stating that 14% of Antioch Police Officers are under investigation by the Federal Bureau of Investigations and the Contra Costa County District Attorney for criminal activity. *Id.* ¶20 n.1. Drawing a connection between this report and the use of excessive force against him, Sterling alleges: "On information and belief, the Defendant Doe Officers' violations of Mr. Sterling's constitutional rights were motivated by the Antioch Police Department's culture of lack of accountability for officers who engage in unlawful conduct." *Id.* ¶ 21.

Regarding Chief Brooks' involvement, Sterling alleges: "On information and belief, these Antioch Police Officers targeted the peaceful protested at the instruction of Defendant Brooks and his high-ranking colleagues in the Antioch Police Department that had planned the party because

2

1   the protesters were disrupting Defendant Brooks' retirement celebration." *Id.* ¶ 19.

2       Defendants filed the present motion on February 3, 2023, moving to dismiss with prejudice
3   the allegations for municipal liability under *Monell* and to dismiss Chief Brooks, arguing he was
4   not an integral participant in any alleged wrongdoing.

### III.   LEGAL STANDARD

6       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal
7   sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff
8   can prove no set of facts in support of his claim which would entitle him to relief." *Cook v.*
9   *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8
10  provides that a complaint must contain a "short and plain statement of the claim showing that the
11  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts
12  to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
13  570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility
14  that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint
15  must therefore provide a defendant with "fair notice" of the claims against it and the grounds for
16  relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

17      In considering a motion to dismiss, the court accepts factual allegations in the complaint as
18  true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v.*
19  *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551
20  U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as
21  true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere
22  conclusory statements." *Iqbal*, 556 U.S. at 678.

23      If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no
24  request to amend the pleading was made, unless it determines that the pleading could not possibly
25  be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en
26  banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny
27  leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated
28  failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. *Monell* Claim

Defendants move to dismiss Sterling's *Monell* claim as conclusory. Mot. at 5. They argue Sterling fails to identify the specific policy he believes to be unlawful and fails to articulate why adoption of that policy amounted to deliberate indifference. *Id.* To the extent Sterling alleges an unconstitutional widespread custom or policy, Defendants argue his claim fails because he relies exclusively on the underlying incident, without mentioning any other examples, either pre- or post- incident, to prove that a widespread custom or culture existed on the date of the incident. *Id.* at 6. Defendants also argue Sterling fails to adequately allege inadequate training or supervision, and he does not allege they failed to investigate the incident promptly or adequately. *Id.* at 6-7.

#### 1. Legal Standard

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 563 U.S. 658, 692 (1978)). However, the municipality may be held liable "only for '[its] own illegal acts.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). It cannot be held vicariously liable for its employees' actions. *Id.* (citations omitted).

To establish municipal liability, plaintiffs "must prove that 'action pursuant to official

4

municipal policy' caused their injury." *Id.* (quoting *Monell*, 563 U.S. at 691). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479-80 (emphasis in original). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61 (citations omitted). Such policy or practice must be a "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). An official municipal policy may be either formal or informal. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories. *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018). The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." *Id.* (quoting *Monell*, 436 U.S. at 694). "A policy or custom may be found either in an affirmative proclamation of policy or in the failure of an official 'to take any remedial steps after [constitutional] violations.'" *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991) (holding that a jury could find a policy or custom of using excessive force from the police chief's failure to discipline officers for such conduct)); *see also Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1234-35 (9th Cir. 2011) (holding that "evidence of a recurring failure to investigate and discipline municipal officers for constitutional violations can help establish the existence of an unconstitutional practice or custom" of using excessive force).

Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that

the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).

Third, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

**2. Analysis**

Sterling does not argue that *Monell* liability is based on an unlawful policy, failure to train, failure to supervise, or failure to discipline. He argues his complaint properly alleges "a custom of lawlessness and disregard for the law." Opp'n at 8. To prove his claim, Sterling must "demonstrate that an 'official policy, custom, or pattern' on the part of [the defendant] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022, 1026 (9th Cir. 2008)). "[A] plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *City of St. Louis*, 485 U.S. at 127 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

Here, Sterling's complaint includes the following allegations specific to his *Monell* claim:

> 19. On information and belief, these Antioch Police Officers targeted the peaceful protesters at the instruction of Defendant Brooks and his high-ranking colleagues in the Antioch Police Department that had planned the party because the protesters were disrupting Defendant Brooks' retirement celebration.
>
> 20. The Antioch Police Department has a troubling recent history of systemic unlawful conduct. Currently, 14% of Antioch Police Officers are under investigation by the Federal Bureau of Investigations and the Contra Costa County District Attorney for criminal activity.
>
> 21. On information and belief, the Defendant Doe Officers' violations of Mr. Sterling's constitutional rights was motivated by the Antioch Police Department's culture of lack of accountability for officers who engage in unlawful conduct.

6

Compl. ¶¶ 19-20.  Other than asserting Sterling's own circumstances, the complaint does not contain specific factual allegations supporting the existence of a policy, custom, or practice, much less how they were the "moving force" behind the alleged constitutional violation.  Sterling does not reference any specific instances of unlawful conduct or events that form the basis for a "culture of lack of accountability."  The only factual allegation to support *Monell* concerns the KTVU news article alleging that unnamed officers were investigated for "crimes of moral turpitude." Compl. ¶ 20 & n.1.; Opp'n at 4.  However, the alleged crimes of moral turpitude do not concern the use of force or retaliatory arrest.  Instead, Sterling alleges the investigation deals with unnamed officers allegedly abusing illegal drugs.  Opp'n at 4 ("These investigations appear to be for multiple forms of crimes of moral turpitude, including the abuse of prescription testosterone supplements and statements from officers about bringing heroin and cocaine to parties.").  Sterling does not allege the alleged drug abuse occurred while an officer was on duty.  Instead, the only alleged connection between the investigation into APD officers and the underlying incident is based entirely "on information and belief."  Compl. ¶ 21; Opp'n at 4.  Sterling's belief is that the alleged violation of his "constitutional rights were motivated by the Antioch Police Department's culture of lack of accountability for officers who engage in unlawful conduct."  Opp'n at 4.  Aside from the alleged investigation into officers for "crimes of moral turpitude," no allegations support a "culture of lack of accountability."

Sterling argues a *Monell* claim can be "based on nothing more than a bare allegation that individual officers' conduct conformed to official policy, custom or practice." *Id.* at 6:17-19 (citing *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)).  In other words, Sterling argues that any alleged constitutional violation can form the basis for a *Monell* claim if the plaintiff alleges, "based on information and belief," that the conduct was based on a policy, custom, or practice.  This is incorrect.  First, the court in *Galbraith* dismissed the *Monell* claim because the plaintiff had not presented sufficient evidence to support it.  Second, as Sterling admits, "some specificity is nevertheless required."  Opp'n at 6 (citing *Inman v. Anderson*, 294 F. Supp. 3d 907, 920 (N.D. Cal 2018).  No such specificity exists here.

Further, although the Ninth Circuit has not "established what number of similar incidents

would be sufficient to constitute a custom or policy," *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017), Sterling's complaint fails to allege facts to support an inference that the practices were "widespread" and so "well settled as to constitute a custom or usage." *See City of St. Louis*, 485 U.S. at 127 (quotation omitted); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) ("Proof of random acts or isolated events is insufficient to establish custom."); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). Sterling admits that "two unconstitutional assaults by county officials occurring three months apart are not sufficient to show a custom or practice." Opp'n at 7 (citing *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) and *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1203 (W.D. Wash. 2008) ("[A]bsent additional proof, the mere existence of one or two incidents of unconstitutional conduct is insufficient to make out a 'pattern or practice' or 'policy and custom' claim under § 1983."). Here, Sterling alleges one unconstitutional violation.

Finally, Sterling concludes without factual support that Chief Brooks ratified the unlawful conduct. He contends that Chief Brooks "instructed the officers to engage in conduct that was motivated by the police custom informing the *Monell* cause of action." *Id.* at 8-9. Assuming that is true, the allegation does not form the basis for *Monell* liability based on a ratification theory as the alleged conduct by Chief Brooks occurred before the officers acted. A final policymaker cannot ratify conduct before it occurs. For purposes of *Monell*, ratification occurs after the alleged constitutional violation. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

In sum, the Court finds Sterling fails to properly allege a *Monell* cause of action. The claim must therefore be dismissed with leave to amend.

**B.     Chief Brooks**

As to Chief Brooks, Defendants argue he should be dismissed because he is named in his individual capacity only and, aside from serving as the Chief of Police, "there are zero facts that Chief Brooks was involved in the incident. There are no factual allegations to support that Chief

8

Brooks used, or participated in another's use of, force." Mot. at 9.

A defendant may be held liable as a supervisor under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). If a supervisory official is not directly involved in the allegedly unconstitutional conduct, then "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). Liability can be established if the supervisor "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Dubner v. City & Cty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001).

As summarized above, Sterling's complaint alleges the APD officers "targeted the peaceful protesters at the instruction of Defendant Brooks and his high-ranking colleagues in the Antioch Police Department." Compl. ¶ 19. These allegations are entirely conclusory, and the complaint contains no factual allegations to support the inference that Chief Brooks was personally involved in the arrest or use of force or that there was a causal connection between his conduct and the constitutional violations allegedly committed by the unnamed officers. *See, e.g., Mitchell v. Cty. of Contra Costa*, 2022 WL 526161, at *7 (N.D. Cal. Feb. 22, 2022) (dismissing supervisory liability claim where plaintiff alleged supervising defendants "either directed his or her subordinates in conduct that violated Plaintiff's rights, OR set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive Plaintiff of rights, OR knew his or her subordinates were engaging in acts likely to deprive Plaintiff of rights and failed to act to prevent his or her subordinate from engaging in such conduct, OR disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate Plaintiff's rights, and, in fact, did cause the violation of Plaintiff's rights."); *Arteaga v. City of Oakley*, 2020 WL 511876, at *2, 7-8 (N.D. Cal.

Jan. 31, 2020) (dismissing supervisory liability claim based on similar allegations). The only allegation supporting Chief Brooks's involvement in the alleged unlawful conduct is based entirely "[o]n information and belief" that he "instruct[ed]" unknown officers to target "the peaceful proteste[rs]." Opp'n at 3. However, Sterling does not allege any facts supporting the contention that Chief Brooks instructed the officers to target anyone. He alleges that police did not become involved until the situation "escalat[ed]" and "a fight broke out" between a protester and a police supporter. *Id.*; Compl ¶ 15. The complaint indicates that the fight between protesters and eventgoers prompted police to get involved, not Chief Brooks. Sterling also argues Chief Brooks could be liable because he "set [] in motion a series of acts by others." Opp'n at 9 (citing *Larez*, 946 F.2d at 646). That allegation, too, is based entirely "on information and belief," without sufficient factual allegations.

As Sterling's claim against Chief Brooks is supported only by legal conclusions and speculation, the Court finds it is subject to dismissal with leave to amend.

### V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss. Sterling's *Monell* claim and supervisory liability claim are dismissed with leave to amend by April 20, 2023.

**IT IS SO ORDERED.**

Dated: March 21, 2023

THOMAS S. HIXSON
United States Magistrate Judge