1

2

3

4               UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7    FRANK STERLING,                          Case No. 22-cv-07558-TSH

8                  Plaintiff,
                                             **ORDER DENYING MOTION TO**
9          v.                                **DISMISS**

10   CITY OF ANTIOCH, et al.,                Re: Dkt. No. 23

11                 Defendants.

12

13                              **I.     INTRODUCTION**

14         Frank Sterling brings this 42 U.S.C. § 1983 case against the City of Antioch and individual

15   members of the Antioch Police Department ("APD"), alleging APD officers unlawfully arrested

16   him and used excessive force.  Pending before the Court is the City of Antioch's Motion to

17   Dismiss Sterling's *Monell*[1] claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No.

18   23.  Sterling filed an Opposition (ECF No. 24) and Defendant filed a Reply (ECF No. 25).  For the

19   reasons stated below, the Court **DENIES** Defendant's motion.[2]

20                              **II.     BACKGROUND**

21   **A.     Factual Background**

22         On September 17, 2021, Sterling and other demonstrators protested the public retirement

23   party of APD Chief Tammany Brooks at Williamson Rach Park in Antioch, California.  First Am.

24   Compl. ¶ 17, ECF No. 22.  Sterling and his fellow protesters, five or six in total, were then

25   confronted by a larger group of approximately 20 police supporters who yelled and threatened

26

27   _____

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).
28   [2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos.
     11, 12, 40-41.

United States District Court
Northern District of California

them, escalating the situation. *Id.* ¶ 18.  Numerous uniformed APD officers on the scene began

monitoring the situation, including Defendants Ricardo Angelini, Steven Miller, Brandon Bushby,

Geoffrey Morris, Brian Rose, and Nicholas Gaitan. *Id.* ¶ 19.  All of these named defendants are

officers for the APD save for Rose, who is a sergeant for the APD, and Gaitan, who is a

community services officer for APD. *Id.*  The officers and other APD personnel stood next to the

police supporters or with their backs to them, "clearly signaling to everyone in attendance that the

police's only intention at that moment was to target and intimidate the protesters." *Id.*

   As the situation continued to escalate, a fight broke out between a protester and a police

supporter. *Id.* ¶ 20.  Multiple APD officers targeted the protester, manhandling her as they

arrested her, while simultaneously allowing the police supporter to go free. *Id.*  Officers on scene,

including the defendant officers, then formed a line in front of the arresting officers. *Id.* ¶ 21.

APD Sergeant Joseph Donleavy then indicated a line in the grass and told the crowd that if anyone

passed it, they would be arrested. *Id.*  The officers then allowed the police supporters to pass this

line without any repercussions, instead targeting any of the protesters who passed the line. *Id.*

   Sterling, a local reporter who has long reported on the APD, began video recording the

event and, while recording, he physically intervened "with what appeared to be Defendant

Angelini's and a fellow officer's use of excessive force on the unarmed protestor already under the

officers' control." *Id.* ¶¶ 24, 30.  Angelini then grabbed Sterling by the neck. *Id.* ¶ 25.  Angelini

was joined by Miller, Morris, and Rose, who then gang-tackled Sterling to the ground. *Id.* ¶ 26.

The officers dragged Sterling face-down to the ground and twisted his legs "in a manner that

seemed solely intended to cause harm." *Id.*  Sterling did not resist the officers, yet they repeatedly

yelled at him to stop fighting "as a pretense to continue their assault on him." *Id.* ¶ 27.  As Rose,

Miller, Angelini, and Morris pinned Sterling to the ground, Rose got out his handcuffs and began

to handcuff him. *Id.*  While Rose was handcuffing him, Bushby ran up to the officers and Sterling

and tased him in the lower back and buttocks. *Id.* ¶ 28.  Bushby began tasing Sterling

approximately 15 seconds after the officers first took him to the ground. *Id.*

   Sterling alleges the City's response to him "suggests an awareness of [his journalism] and

targeting of Mr. Sterling because of it." *Id.* ¶ 30.  As part of his arrest, officers took his cellphone

United States District Court
Northern District of California

and audio recorder.  *Id.*  As of the date of filing this case, the City has yet to return his property, even though the criminal case was resolved in November of 2022.  *Id.*

**B.     Procedural Background**

Sterling filed this case on December 1, 2022, alleging three causes of action under 42 U.S.C. § 1983: (1) First Amendment retaliatory arrest against Defendant Does 1-50; (2) Fourth Amendment excessive force against Defendant Does 1-50; and (3) supervisory and municipal liability for unconstitutional custom or policy under *Monell* against City of Antioch, APD Chief Tammany Brooks, and Defendant Does 1-50.  Compl. ¶¶ 24-36, ECF No. 1.  As to his *Monell* cause of action, Sterling alleged APD has a "recent history of systemic unlawful conduct" and a "culture of lack of accountability for officers who engage in unlawful conduct."  *Id.* ¶¶ 20, 21.  As evidence of this culture, Sterling included a link to a KTVU news story published on August 22, 2022, stating that 14% of Antioch Police Officers are under investigation by the Federal Bureau of Investigations and the Contra Costa County District Attorney for criminal activity.  *Id.* ¶ 20 n.1. Drawing a connection between this report and the use of excessive force against him, Sterling alleged: "On information and belief, the Defendant Doe Officers' violations of Mr. Sterling's constitutional rights were motivated by the Antioch Police Department's culture of lack of accountability for officers who engage in unlawful conduct."  *Id.* ¶ 21.  Regarding Chief Brooks's involvement, Sterling alleged: "On information and belief, these Antioch Police Officers targeted the peaceful protested at the instruction of Defendant Brooks and his high-ranking colleagues in the Antioch Police Department that had planned the party because the protesters were disrupting Defendant Brooks' retirement celebration."  *Id.* ¶ 19.

On February 3, 2023, Defendants moved to dismiss with prejudice the allegations for municipal liability under *Monell* as conclusory, and to dismiss Chief Brooks because he was not an integral participant in any alleged wrongdoing.  ECF No. 8.  On March 21 the Court granted Defendants' motion to dismiss.  ECF No. 18; *Sterling v. City of Antioch*, 2023 WL 2600454, at *1 (N.D. Cal. Mar. 21, 2023).  As to his *Monell* claim, Court found Sterling failed to properly allege a *Monell* cause of action.  The Court noted that, other than asserting his own circumstances, Sterling's complaint did not contain specific factual allegations supporting the existence of a

policy, custom, or practice, much less how they were the "moving force" behind the alleged constitutional violation. *Sterling*, 2023 WL 2600454, at *4. The Court also noted that the Ninth Circuit has not "'established what number of similar incidents would be sufficient to constitute a custom or policy,'" but that Sterling's complaint "fails to allege facts to support an inference that the practices were 'widespread' and so 'well settled as to constitute a custom or usage.'" *Id.* (quoting *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995), *as amended on denial of reh'g* (Jan. 12, 1996); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

As to Chief Brooks, the Court found Sterling's allegations were "entirely conclusory, and the complaint contains no factual allegations to support the inference that Chief Brooks was personally involved in the arrest or use of force or that there was a causal connection between his conduct and the constitutional violations allegedly committed by the unnamed officers." *Sterling*, 2023 WL 2600454, at *6. The Court noted that the "only allegation supporting Chief Brooks's involvement in the alleged unlawful conduct was based entirely '[o]n information and belief' that he 'instruct[ed]' unknown officers to target 'the peaceful proteste[rs].' *Id.* (quoting Opp'n at 3, ECF No. 14). However, Sterling did not allege any facts supporting the contention that Chief Brooks instructed the officers to target anyone, as the complaint indicated that the fight between protesters and eventgoers prompted police to get involved, not Chief Brooks. *Id.*

The Court granted Sterling leave to amend his *Monell* and supervisory liability claims. *Id.*

Sterling filed his amended complaint on April 27, alleging three causes of action: (1) First Amendment retaliatory arrest against Defendants Bushby, Angelini, Miller, Morris, Rose, Gaitan, and Does 1-50; (2) Fourth Amendment excessive force against Defendants Bushby, Angelini, Miller, Morris, Rose, Gaitan, and Does 1-50; and (3) supervisory and municipal liability for unconstitutional custom or policy under *Monell* against City of Antioch and Defendant Does 1-50.

## C.    *Monell* Allegations

In support of his *Monell* claim, Sterling alleges the officers were "motivated by the APD's culture of lawlessness, violent excessive force, disregard for civil rights, and lack of accountability for officers who engage in unlawful conduct." First Am. Compl. ¶ 40. He alleges recent reporting

on the joint investigation by the FBI and Contra Costa County District Attorney's Office

"suggested that investigators have found evidence of, among other things, widespread assaults

under the color of authority and civil rights violations relating to officers' use of force." *Id.* ¶ 32.

He notes the agencies "are also investigating dozens of sickening racist texts shared between

nearly two dozen APD Officers over the past two (2) years.  In these messages, APD officers

> congratulated each other on the violence that they inflicted upon
> civilians during arrests and talked about falsifying police reports.
> When discussing a Black Lives Matters protest, yet another officer
> promised to buy any officer a prime rib dinner at a fancy steakhouse
> if they shot Antioch Mayor Lamar Thorpe—a Black man—with a
> rubber bullet weapon that is commonly used on protesters. Other
> officers shared images mocking the death of George Floyd and
> referred to him as a racist slur. In November 2020, when one (1)
> officer asked a group of officers what they were doing, another
> responded "violating civil rights". Yet another officer made racist and
> sexist remarks about a prominent police reform advocate in Antioch.

*Id.* ¶ 34.  Sterling alleges these texts "also reflect that there is a culture within the APD of lying

regarding use of force, probable cause, and other violations of civil rights:

> One (1) officer advised another to lie about a suspect refusing to
> comply in order to take a forced blood draw from the unconscious
> subject. Another officer admitted that he sometimes lies about
> suspects giving him confessions when they did not because there is
> no video to prove him wrong and it makes filing charges easier.  That
> same officer and another lamented the use of body-worn cameras
> because it prevented them from "fuck[ing] him up more", in reference
> to a detained subject.

*Id.* ¶ 35.  Sterling alleges these texts reflect just how pervasive and entrenched this culture of lack

of accountability, racism, violence, and disregard for civil rights is in the APD." *Id.* ¶ 33.  At least

17 officers are now on leave or suspended as a result of evidence discovered by this investigation.

*Id.* ¶ 31.

Beyond the assault giving rise to this litigation, Sterling alleges he "was unlawfully beaten

in 2009 by several APD officers, including Sergeant Hoffman, who at the time was an officer.

During this previous incident, Sergeant Hoffman called Mr. Sterling a 'faggot' before kicking him

in the face while Mr. Sterling was on the ground." *Id.* ¶ 37.  All criminal charges against Sterling

from this previous incident were dropped "after exculpatory video evidence was discovered in the

possession of the APD, despite their representations to both Mr. Sterling and his criminal counsel

United States District Court
Northern District of California

1   that the video no longer existed." *Id.* Sterling alleges "the Defendant City appears to have

2   identified Sergeant Hoffman as an example of the type of law enforcement conduct it desires" as

3   he "did not face any discipline following his concerning assault of Mr. Sterling and blatant

4   homophobia" and named him "Officer of the Year" in 2018. *Id.* ¶ 38. Sterling alleges "[t]he fact

5   that Sergeant Hoffman was not fired for this conduct and instead has risen up the APD's ranks is

6   not only deeply troubling, but also an illustration of the APD's culture of lawlessness, lack of

7   accountability, violent excessive force, and disregard for civil rights." *Id.* ¶ 39.

8   **D.      Motion to Dismiss**

9           The City of Antioch filed the present motion on May 11, 2023. It argues the factual

10  allegations in support of Sterling's *Monell* claim neither relate to the underlying incident nor

11  support the existence of a custom or policy that was the moving force behind the constitution. It

12  maintains Sterling's allegations "are factually distinct from the underlying incident," "involve

13  dissimilar events that occurred after the underlying incident," and therefore cannot form the basis

14  for *Monell* liability.

15                          **III.    LEGAL STANDARD**

16          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

17  sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff

18  can prove no set of facts in support of his claim which would entitle him to relief." *Cook v.*

19  *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8

20  provides that a complaint must contain a "short and plain statement of the claim showing that the

21  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts

22  to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23  570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility

24  that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint

25  must therefore provide a defendant with "fair notice" of the claims against it and the grounds for

26  relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

27          In considering a motion to dismiss, the court accepts factual allegations in the complaint as

28  true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v.*

United States District Court
Northern District of California

1   *St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551

2   U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as

3   true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

4   conclusory statements." *Iqbal*, 556 U.S. at 678.

5         If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

6   request to amend the pleading was made, unless it determines that the pleading could not possibly

7   be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en

8   banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny

9   leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

10   failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

11   party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,

12   892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

13   (1962)).

14                        **IV.   DISCUSSION**

15   **A.   Standard for Municipality Liability Under *Monell***

16         The Civil Rights Act, codified at 42 U.S.C. § 1983, provides that "[e]very person who,

17   under color of [law] . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation

18   of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to

19   the party injured[.]" 42 U.S.C. § 1983.  Under this section, municipalities and other local

20   governments are considered "persons." *Monell*, 436 U.S. at 690.  "[Section] 1983 'is not itself a

21   source of substantive rights,' but merely provides 'a method for vindicating federal rights

22   elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v.

23   McCollan*, 443 U.S. 137, 144 n.3 (1979)).

24         Under *Monell*, a municipality may be held liable "only for '[its] own illegal acts.'"

25   *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S.

26   469, 479 (1986)).  It cannot be held vicariously liable for its employees' actions.  *Id.* (citations

27   omitted).  To successfully establish *Monell* liability, Sterling must show (1) he was deprived of a

28   constitutional right; (2) the City had a policy, practice or custom that caused the constitutional

1  deprivation; (3) the policy or custom amounted to deliberate indifference to his constitutional

2  right; and (4) the policy or custom was the moving force behind the constitutional violation.

3  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation and quotations omitted).

4  Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly adopted

5  official policy; (2) a longstanding practice or custom which constitutes the "standard operating

6  procedure" of the local government entity; (3) a decision of a decision-making official who was,

7  as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to

8  represent official policy in the area of decision; or (4) an official with final policymaking authority

9  either delegating that authority to, or ratifying the decision of, a subordinate.  *See Thomas v. Cty.*

10  *of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir.

11  2008).

12        Prior to the Supreme Court decisions in *Twombly* and *Iqbal*, a claim for municipal liability

13  could "withstand a motion to dismiss 'even if . . . based on nothing more than a bare allegation

14  that the individual officers' conduct conformed to official policy, custom, or practice.'"  *Karim-*

15  *Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988) (citing *Shah v. Cty. of Los*

16  *Angeles Intelligence & Coordination Unit*, 797 F.2d 743, 747 (9th Cir. 1986)).  In light of

17  *Twombly* and *Iqbal*, the Ninth Circuit has articulated a two-part rule to govern evaluation of

18  allegations: (1) the complaint "may not simply recite the elements of a cause of action, but must

19  contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

20  party to defend itself effectively;" and (2) the "factual allegations that are taken as true must

21  plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to

22  be subjected to the expense of discovery and continued litigation."  *A.E. ex rel. Hernandez v. Cty.*

23  *of Tulare*, 666 F.3d 631, 636-37 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th

24  Cir. 2011)).

25  **B.    Analysis**

26        Sterling's *Monell* claim is based on a longstanding practice or custom theory, alleging "a

27  culture of lawlessness, violent excessive force, disregard for civil rights, and lack of accountability

28  for officers who engage in unlawful conduct."  First Am. Compl. ¶ 40.  To plead a *Monell* claim

8

United States District Court
Northern District of California

1    through a longstanding practice or custom, it "must be so 'persistent and widespread' that it

2    constitutes a 'permanent and well settled city policy.'" *Trevino*, 99 F.3d at 918 (citing *Monell*,

3    436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic

4    incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that

5    the conduct has become a traditional method of carrying out policy." *Id.* (citations omitted).

6         The line between "isolated or sporadic incidents" and "persistent and widespread conduct"

7    is not clearly delineated. *See Oyenik*, 696 F. App'x at 794; *compare Davis v. City of Ellensburg*,

8    869 F.2d 1230, 1233-34 (9th Cir. 1989) (single incident of excessive force inadequate to establish

9    liability); *Meehan v. Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (two incidents

10   insufficient); *with Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (triable issue of

11   fact existed as to whether Seattle had an unconstitutional policy or custom of suppressing certain

12   political speech based on the testimony of several individuals that their entry to a particular area

13   was permitted by police only after they removed offending buttons and stickers, coupled with the

14   testimony of the officer in charge that the City would not permit "demonstrations" in the area).

15   However, it is clear that liability "must be founded upon practices of sufficient duration, frequency

16   and consistency that the conduct has become a traditional method of carrying out policy."

17   *Trevino*, 99 F.3d at 918.

18        Accepting Sterling's allegations as true and construing the pleadings in the light most

19   favorable to him, the Court finds Sterling's allegations support an inference that the practices were

20   widespread and so well settled as to constitute a custom or usage. As summarized above,

21   Sterling's amended complaint contains several factual allegations in support of a widespread

22   custom within the APD. Citing both local and national reporting, he points to the FBI and Contra

23   Costa County District Attorney's Office's joint investigation into the APD that has revealed

24   evidence of potential assaults under the color of authority and other civil rights violations related

25   to the use of force. He also alleges multiple years of group text chains involving 45 APD

26   personnel. He further alleges that multiple high-ranking officials with the City have

27   acknowledged the systemic pervasiveness of this custom within the APD. He points to a media

28   release published on the APD's social media platforms on April 13, 2023, in which APD Chief

9

United States District Court
Northern District of California

1  Steve Ford acknowledged the APD has a "sickening disease of racism and other incompatible

2  behaviors within our ranks."  First Am. Compl. ¶ 36 (citing

3  https://twitter.com/AntiochPolice/status/1646659571480666112;

4  https://www.facebook.com/photo.php?fbid=598861195599950&set=a.228771749275565&type=3

5  ).  He also points to a statement from Antioch Mayor Lamar Thorpe, in which he stated that this

6  culture within the APD "requires further explanation, including: how the hell did all this alleged

7  misconduct go on for so long without anyone at our command staff noticing, from lieutenant on up

8  to the chief."  *Id.* (citing https://www.nbcnews.com/news/us-news/racist-text-messaging-

9  investigation-rocks-northern-california-police-drcna79676).  Sterling also points to his own prior

10  experience with APD in which he was assaulted by several officers, including Hoffman, who later

11  received multiple promotions and awards in the following years.  *Id.* ¶ 38.  Sterling alleges this

12  conduct supports his *Monell* allegations because it shows "the custom within the Defendant City's

13  police department of disregarding civilians' civil rights and violent excessive force is not merely

14  tolerated by supervisors, but may even be actively rewarded."  Opp'n at 9-10.  These allegations,

15  taken as a whole, allow the Court to reasonably infer a custom or policy.  *See Johnson v. City of*

16  *San Jose*, 2022 WL 17583638, at *7 (N.D. Cal. Dec. 12, 2022) (denying motion to dismiss *Monell*

17  claim where plaintiff alleged San Jose has "an unwritten custom or practice of using excessive

18  force, including the use of projectile weapons, tear gas, and kettling, with little or no warning

19  against people participating in protests against the racist killings of Black people by police

20  officers," and plaintiff "points to several cases from other district courts across the country

21  addressing this same issue in the context of the May 2020 police brutality protests."); *Menotti*, 409

22  F.3d at 1147 (triable issue of fact existed as to whether five incidents of suppression of political

23  speech amounted to an unconstitutional policy or custom); *Sanchez v. City of Fresno*, 914 F. Supp.

24  2d 1079, 1096 (E.D. Cal. 2012) ("The line between 'isolated or sporadic incidents' and 'persistent

25  and widespread conduct' is not clearly delineated, although where more than a few incidents are

26  alleged, the determination appears to require a fully-developed factual record."); *Jarbo v. County*

27  *of Orange*, 2010 WL 3584440, at *10 (C.D. Cal. Aug. 30, 2010) ("Cases which have found triable

28  issues of fact involve specific evidence of actions from which a broad policy, practice, or

custom—evidence that extends beyond the individual officer defendant's actions—can be inferred."); *Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013), *aff'd sub nom. Sandoval v. Cty. of Sonoma*, 591 F. App'x 638 (9th Cir. 2015), *opinion amended and superseded on denial of reh'g*, 99 F. App'x 673 (9th Cir. 2015), *and aff'd*, 599 F. App'x 673 (9th Cir. 2015) (*Monell* claim sufficiently pleaded where allegations specified the content of the policies, customs, or practices that gave rise to plaintiffs' injuries); *Zaragoza v. Cty. of Riverside*, 2021 WL 968967, at *4 (C.D. Cal. Feb. 18, 2021) ("If Plaintiffs were able to plead a pattern of similar incidents, such as previous excessive force incidents within the County, such allegations would serve a valuable function in the scheme of their Monell claims."

Further, the Court recognizes it is difficult at this stage to make extremely specific allegations regarding policies without the aid of discovery, particularly when information relating to the policies, customs, and practices of APD is likely to be more easily available to Defendants. *See Mateos-Sandoval*, 942 F. Supp. 2d at 900 ("The allegations are sufficient to 'give fair notice and to enable the opposing party to defend itself effectively,' particularly since information relating to the policies, customs, and practices of County Defendants in enforcing § 14602.6 and related statutory sections is likely to be easily available to them.") (quoting *Starr*, 652 F.3d at 1216); *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173 (E.D. Cal. June 25, 2019) ("Whether these previous cases are all manifestations of the same policy or custom, and whether that policy or custom was the moving force behind the injury to decedent in this case, are factual issues to be determined following the discovery phase of this litigation."). Therefore, at this stage in the proceedings, the Court finds Sterling has pled facts sufficient to state a claim that the City is liable under *Monell*.[3]

---

[3] In its motion, the City focuses on Sterling's allegations regarding APD's "ideological differences with the protestors and sympathies for the pro-police supporters," arguing "[t]here are no examples of 'similar incidents' that equate to a custom or policy of biased policing based on 'ideological differences.'" Mot. at 6-7 (citing First Am. Compl. ¶ 23). However, Sterling's complaint focuses on APD's "culture of lawlessness, violent excessive force, disregard for civil rights, and lack of accountability for officers who engage in unlawful conduct". First Am. Compl. ¶ 40. This is the custom that supports Sterling's *Monell* claim, not a pattern of biased policing based on ideological differences as the City suggests.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## V.    CONCLUSION

For the reasons stated above, the Court **DENIES** the City of Antioch's motion to dismiss. The Court shall conduct a Case Management Conference on August 10, 2023 at 10:00 a.m. by Zoom video conference.  The webinar link and instructions are located at https://cand.uscourts.gov/judges/hixson-thomas-s-tsh/.  This conference shall be attended by lead trial counsel.  By August 3, 2023, the parties shall file a Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/tshorders.  The Joint Case Management Statement form may be obtained at: http://cand.uscourts.gov/civilforms.

**IT IS SO ORDERED.**

Dated: July 5, 2023

THOMAS S. HIXSON
United States Magistrate Judge